**In re Anonymous No. 14 D.B. 86**

496

Disciplinary Docket no. 14 D.B. 86.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

WITHEREL, *Member,* March 22, 1996—Pursuant to Rule 218(c)(5) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania submits its findings and recommendations to your honorable court with respect to the above-captioned petition for reinstatement.

## I. HISTORY OF PROCEEDINGS

On August 15, 1994, petitioner, [     ], filed a petition for reinstatement. Petitioner was disbarred on consent by order of the Supreme Court of Pennsylvania dated July 21, 1986. The petition was referred to Hearing Committee [     ] comprised of Chairperson [     ], Esquire, and Members [     ], Esquire and [     ], Esquire. The reinstatement hearing was held on May 12, 1995. Petitioner was represented by [     ], Esquire. Office of Disciplinary Counsel was represented by [     ], Esquire.

On October 17, 1995, the committee filed its report and recommended that the petition be granted with conditions. No briefs on exceptions were filed by either party. This matter was adjudicated by the Disciplinary Board at the meeting of December 7, 1995.

## II. FINDINGS OF FACT

(1) Petitioner was born on [     ]. He was admitted to the practice of law in Pennsylvania in April 1967. He is married and has one son.

(2) Petitioner practiced law as a sole practitioner from 1967 through 1986. Additionally, during this period

of time he served as an assistant district attorney and an assistant public defender in [    ] County.

(3) Petitioner received a public censure in 1986 and an informal admonition in 1981.

(4) Petitioner's disbarment on consent was precipitated by his misconduct which included the neglect of client files in addition to commingling and conversion of client funds.

(5) Petitioner was substantially out of trust with regard to numerous client funds which he held prior to his disbarment. By the time of his disbarment, all such clients had received from petitioner all of the monies he held on their behalf.

(6) Subsequent to petitioner's disbarment, the Pennsylvania Lawyers' Fund for Client Security paid two former clients the amount of $2,799. Petitioner repaid all such monies to the Client Security Fund. (Petition for reinstatement.)

(7) Petitioner has been a defendant in a number of civil matters for legal malpractice which resulted in judgments entered against him. Petitioner acknowledges that these judgments have not been satisfied. Petitioner testified that since his disbarment, he has never had any funds available for the purpose of making payments against such judgments. He also testified that such judgments have expired as a result of the plaintiffs' failure to renew the judgments. Petitioner testified to his willingness to compensate former clients once resources become available. (N.T. 133-37.)

(8) Petitioner is currently employed at [A] Bank as a clerk during the day and at [B] as a paralegal instructor at night. Petitioner' s current gross income from these jobs is approximately $17,000. (N.T. 69-75, 83.)

(9) Subsequent to his disbarment, it was determined that petitioner suffered from a severe alcohol dependency problem coupled with a personality disorder. (N.T. 121.

(10) Since 1986, petitioner has received extensive treatment for both of his medical problems. Such treatment included inpatient care at the [C] Institute in [    ], counseling, inpatient aftercare, and active participation in alcohol abuse support groups, such as Alcoholics Anonymous. This participation continues at present.

(11) Petitioner testified that he has not used alcohol since 1986, and he has overcome his personality disorder. (N.T. 124.)

(12) Petitioner attended the basic practice course at [    ] University in satisfaction of Rules 89.275(a) and 89.279(a) of the Disciplinary Board Rules, and he reads the advance sheets. Petitioner's employment as a paralegal instructor of necessity requires him to keep apprised of trends in the law. (Petition for reinstatement.)

(13) Witnesses testified on petitioner's behalf as to his moral character and good reputation in the community. These witnesses testified that petitioner would be a credit to the community if he was reinstated. (N.T. 43-51, 53-58, 61-65.)

(14) Two attorneys from the community testified that petitioner was a skilled and dedicated practitioner and would be a credit to the profession if reinstated. (N.T. 17-27, 28-37.)

(15) Petitioner's employer at [B] testified that petitioner was very well prepared, punctual, and exhibited no signs of alcohol use. (N.T. 70-73.)

(16) Petitioner expressed remorse and regret for his conduct. (N.T. 112.)

(17) Petitioner has been disbarred for nine and one-half years. He could have petitioned for reinstatement several years ago but chose to wait until he was certain he was ready to practice law again. (N.T. 103-105.)

## III. CONCLUSIONS OF LAW

The misconduct for which petitioner was disbarred is not so egregious as to preclude immediate consideration of his petition for reinstatement.

Petitioner has satisfied his burden by demonstrating through clear and convincing evidence that he possesses the moral qualifications, competency and learning in the law necessary to practice law in the Commonwealth of Pennsylvania.

Petitioner's resumption of the practice of law will not be detrimental to the integrity of the bar nor will it be subversive to the interests of the public.

## IV. DISCUSSION

Petitioner seeks reinstatement from a disbarment. Determining whether to grant the petition requires a two-step analysis.

The board must initially decide whether the conduct for which petitioner was disbarred was so egregious as to preclude possible reinstatement at this time. Such an inquiry demands analysis of whether a sufficient amount of time has passed since the misconduct occurred, during which petitioner engaged in a qualitative period of rehabilitation. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). Assuming petitioner's misconduct will not prevent consideration of his current request for reinstatement, the next question is whether petitioner possesses the moral qualifications, competency and learning in the law necessary to merit

readmission to the Pennsylvania Bar. It is petitioner's burden to prove, by clear and convincing evidence, that he has the moral qualifications, competency and learning in the law necessary to resume practice in this Commonwealth, and that his resumption of practice will not be detrimental to the integrity of the bar nor subversive of the interests of the public. Rule 218 (c)(3)(i), Pa.R.D.E.

The initial point of inquiry when a disbarred attorney seeks reinstatement is whether the conduct which led to disbarment is so patently offensive and contrary to the spirit of the bar that reinstatement is impossible. There are certain acts of misconduct so repellant to the integrity of the bar and opposite to the interests of the public that no amount of time or rehabilitation can cure the injustice that the petitioner's reinstatement would cause. Therefore, when entertaining a petition for readmission, a review of the underlying offenses is required as an initial step in determining eligibility for reinstatement. Review of the facts of this case indicate that while petitioner's misconduct was serious, it was not so egregious a breach of trust or repugnant to the integrity of the bar or interests of the public to obviate his reinstatement. Petitioner was disbarred on consent after he engaged in negligent handling of client files in addition to commingling and conversion of client funds. Petitioner consented to his disbarment as he realized that his abuse of alcohol was affecting his practice of law, and he needed to receive treatment. Shortly after disbarment, petitioner entered an inpatient alcohol treatment facility. The conclusion that petitioner's misconduct is not so egregious as to preclude his reinstatement at this time is supported by case law. In the case of *In re Anonymous No. 44 D.B. 82,* 24 D.&C.4th 434 (1994), an attorney was disbarred on

consent after conversion of client and partnership funds. The board concluded that while this conversion of funds was serious, it was not so egregious as to preclude readmission to the bar after a passage of time during which the attorney rehabilitated herself. In the case of *In re Anonymous No. 24 D.B. 84,* 14 D.&C.4th 235 (1991), an attorney was disbarred on consent following allegations of misuse of client funds and neglect. The attorney was reinstated as the board concluded that the misconduct was not so egregious as to preclude his readmission. In the case of *In re Anonymous No. 67 D.B. 81,* 13 D.&C.4th 652 (1991), an attorney was disbarred for mismanagement, commingling and conversion of client funds. After review of the underlying actions, the board determined that the attorney's misconduct was not so repugnant as to obviate his reinstatement.

Having determined that petitioner's misconduct was not so egregious as to permanently avert his reinstatement to the Pennsylvania Bar, the next query is whether a quantitative period during which petitioner has engaged in qualitative rehabilitation has elapsed since his 1986 disbarment, so as to make his readmission request timely. Petitioner has been removed from the practice of law for over nine years. A review of other reinstatement cases, while not a mandate for the model duration of disbarment, illustrates that the length of disbarment is subjective and based on the petitioner's rehabilitation. *In re Anonymous Nos. 22 D.B. 79 and 33 D.B. 83,* 21 D.&C.4th 450 (1993) (attorney reinstated after 12 years during which time he received psychological counseling, overcame mental problems, administered a non-profit organization, and worked as a teacher and paralegal); *In re Anonymous No. 47 D.B. 86,* 14 D.&C.4th 588 (1992) (attorney reinstated after

six years during which he successfully overcame his drug addiction through counseling); *In re Anonymous No. 24 D.B. 84, supra* (attorney reinstated after seven years during which he received treatment for his cocaine and gambling addictions); *In re Anonymous No. 33 D.B. 82,* 13 D.&C.4th 464 (1991) (attorney reinstated after eight and one-half years during which he supported his family as an insurance salesman and did not engage in any financial improprieties such as the conduct that led to his disbarment).

In the instant matter, petitioner's nine year absence from the bar included a period of qualitative rehabilitation during which he sought treatment for the alcoholism which led to his disbarment on consent. Petitioner received inpatient treatment and counseling and continues his rehabilitation by attending Alcoholics Anonymous. Petitioner acknowledges he has a severe problem with alcohol and currently abstains from its use. Alcoholism was the root of petitioner's professional misconduct. Petitioner appears to have successfully addressed this problem.

Additionally during this time frame, petitioner supported his family through a variety of jobs, including clerking at a bank during the day and instructing at a paralegal institute at night. Petitioner is aware that he could have petitioned for reinstatement at an earlier time; however, he candidly admits that he did not petition until he was certain he was ready for such a step. Based on this evidence the board concludes that petitioner has participated in a qualitative period of rehabilitation since his disbarment.

The next burden for petitioner to overcome in order to be reinstated is compliance with Rule 218, Pa.R.D.E., which mandates that he demonstrate, with clear and convincing evidence, that he has the requisite moral

qualifications, competency and learning in the law expected of a Pennsylvania lawyer and that his resumption of the practice of law will not be subversive to the interests of the public nor offensive to the integrity of the bar.

Petitioner presented favorable character testimony from members of the community, the bar, and his employer. All of these witnesses testified that petitioner was a moral person and a credit to the community. None of these witnesses expressed reservations concerning petitioner's reinstatement. Petitioner expressed his sincere remorse for his misconduct and has amply demonstrated his commitment to rehabilitation.

Petitioner presented evidence that he took the required PBI courses and he reads the advance sheets. Petitioner is a paralegal instructor and maintains currency in the law through preparation for his classes. Petitioner indicated he would like to work for a law firm as opposed to practicing by himself if he is reinstated.

The Hearing Committee found that petitioner met his burden of proof and recommended reinstatement. However, the committee conditioned the reinstatement on appointment of a sobriety monitor and restitution to the victims of his legal negligence who had judgments against him. There is no authority in the Rules of Disciplinary Enforcement for conditions in a reinstatement case. Rule 218(c)(3)(i), Pa.R.D.E., governs reinstatement and specifically states that a disbarred attorney must demonstrate clearly and convincingly that he or she has moral qualifications, competency and learning in the law and that resumption of the practice of law will be neither detrimental to the integrity and standing of the bar or administration of justice nor subversive of the public interest. If a Hearing Committee concludes that a disbarred attorney has met his or her burden

of proof, it is not logical to then add conditions. Conditions indicate that the attorney has not met his or her burden of proof clearly and convincingly and thus should not be reinstated at that time. There appear to be no published cases wherein a reinstated attorney had a sobriety monitor appointed as a condition of reinstatement. Even if such was allowed under the rules, the facts of this case do not warrant a sobriety monitor. Petitioner has been sober since 1986. According to the record, he has never had a drink since that time and he regularly attends Alcoholics Anonymous. By all accounts he is sincerely devoted to his sobriety. As to the conditions relative to reimbursement for the judgments against him, case law suggests that petitioner's failure to satisfy a judgment does not reflect adversely upon his moral qualifications to practice law and should not be held against petitioner, especially if petitioner shows that he does not have the financial ability to repay the money. The record evinces that although petitioner works two jobs, he makes approximately $17,000 per year, which goes to the support of his family. See *In re Anonymous No. 82 D.B. 84,* 8 D.&C.4th 514 (1990); *In re Anonymous Nos. 26 D.B. 73 and 32 D.B. 73,* 45 D.&C.3d 172 (1986).

In light of petitioner's satisfaction of the *Keller* requirements, his compliance with the requisites of Rule 218, Pa.R.D.E., and his remorse, the board concludes that petitioner's reinstatement would not hinder the interests of the public nor jeopardize the integrity of the bar.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that petitioner, [    ], be reinstated to the practice of law.

506

The board further recommends that, pursuant to Rule 218(e), Pa.R.D.E., petitioner be directed to pay the necessary expenses incurred in the investigation and processing of the petition for reinstatement.

Board Member Leonard recused himself.

Board Member Carson did not participate in the December 7, 1995 adjudication.

## ORDER

And now, May 6, 1996, upon consideration of the report and recommendations of the Disciplinary Board of the Supreme Court of Pennsylvania dated March 22, 1996, the petition for reinstatement is granted.

Pursuant to Rule 218(e), Pa.R.D.E., petitioner is directed to pay the expenses incurred by the board in the investigation and processing of the petition for reinstatement.